IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

EVELYN M. GREENE,
    Plaintiff,

vs.                                 Case No.: 5:12cv242/MMP/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]
    Defendant.
_____/

**ORDER, REPORT AND RECOMMENDATION**

       This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court pertaining to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

       Upon review of the record, the court concludes that certain determinations of the Commissioner do not comport with proper legal principles. Thus the court recommends that the decision of the Commissioner be reversed and remanded for further proceedings consistent with this Report and Recommendation.

I.     PROCEDURAL HISTORY

       On September 24, 2007, Plaintiff filed an SSI application alleging disability beginning August 1, 2001, which date she later amended to February 16, 2009 (tr. 31; 187).[2] Plaintiff's application was

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Michael J. Astrue as the Defendant in this case.

[2] All references to "tr." refer to the transcript of Social Security Administration record filed on October 18, 2012 (doc. 10). Also, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may

denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ"). An ALJ held a hearing on July 21, 2010, at which Plaintiff was represented by counsel, and Plaintiff and a vocational expert ("VE") testified.[3] On August 13, 2010, a decision was issued in which the ALJ found Plaintiff "not disabled," as defined under the Act, at any time through the date of the decision (tr. 31–40).[4] The Appeals Council subsequently denied Plaintiff's request for review (tr. 8–13). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

II. FINDINGS OF THE ALJ

In the August 13, 2010, decision the ALJ made the following findings:

1) Plaintiff has not engaged in substantial gainful activity since February 16, 2009, her amended alleged disability onset date.[5]

2) Plaintiff has the following severe impairments: cervical spine degenerative disc disease at C4-6 with herniated nucleus pulposus at C5-6; diabetes mellitus; and obesity.[6]

3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.

---

appear.

[3] At the hearing, after amending her disability onset date to February 16, 2009, Plaintiff withdrew the application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, she had filed concurrently with her SSI application (see doc. 16 at 2 n.2; tr. 31; 67). In his decision the ALJ noted that Plaintiff's date last insured for DIB purposes was June 30, 2004; given Plaintiff's amended alleged disability onset date, she therefore was not eligible for DIB (tr. 31).

[4] ALJ Morton J. Gold, Jr., conducted the administrative hearing and his name appears on the decision. ALJ Millard L. Biloon signed the decision for ALJ Morton, however.

[5] Thus the time frame relevant to Plaintiff's claim for SSI is February 26, 2009 (amended alleged disability onset date), through August 13, 2010 (date of ALJ's decision). See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

[6] The ALJ identified the following impairments as being non-severe: degenerative joint disease of the knees; abdominal pain; one episode of varicose veins; cellulitis; chest congestion; left wrist pain; deep vein thrombosis; dementia; mental retardation; and pain disorder (tr. 34).

Case No.: 5:12cv242/MMP/EMT

4) Plaintiff has the residual functional capacity ("RFC") to perform light work,[7] with certain limitations.[8]

5) Plaintiff is capable of performing her past relevant work as a utility worker in a florist shop.

6) Alternatively, in light of Plaintiff's age, education, work experience, and RFC, and based on the testimony of the VE, other jobs exist in significant numbers in the national economy that Plaintiff can perform.

    a) Plaintiff was an individual "closely approaching advanced age" on her amended alleged disability onset date.

    b) Plaintiff has a limited education and is able to communicate in English.

    c) The Medical-Vocational Rules, used as a framework for decisionmaking, support a finding that Plaintiff is "not disabled." Thus, regardless of whether Plaintiff has transferable job skills, the transferability of job skills is not material to the disability determination.

    d) The VE testified that Plaintiff could perform all of the requirements of the positions of office helper, ticket seller, and cafeteria attendant.

7) Plaintiff has not been under a disability, as defined in the Act, from February 16, 2009 (amended alleged disability onset date) through August 13, 2010 (date of the ALJ's decision).

III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

[8] Plaintiff is precluded from climbing ladders, ropes, or scaffolds (tr. 35). Plaintiff can sit, stand, walk, and push and/or pull for at least six of eight hours, each, in an eight-hour workday (*id.*). She is limited to climbing ramps and stairs and crawling occasionally (one-third of an eight-hour workday) (*id.*). She can individually sit, stand, walk, push, and pull for at least six hours in an eight-hour work day (*id.*).

1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 416.920(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

      3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

      4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

      5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. §§ 404.1512, 416.912.[9] If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL HISTORY AND MEDICAL HISTORY

      A.      Personal History

Plaintiff was born on February 16, 1959 (tr. 55), making her fifty years of age on February 16, 2009, her amended alleged disability onset date (tr. 31). At the time of the July 21, 2010, administrative hearing and the August 13, 2010, unfavorable decision, Plaintiff was fifty-one years old. She is left-handed (tr. 55).

      B.      Plaintiff's Medical History

As previously noted, the time frame relevant to this appeal is February 16, 2009, through August 13, 2010. Many of the treatment records and records from consultative examiners and non-examining agency experts, however, are not from within the pertinent period. Nevertheless, in order

---

[9] The legal standards applied generally are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (see 20 C.F.R. §§ 404, 416). Therefore, citations in this Order, Report and Recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

Case No.: 5:12cv242/MMP/EMT

to adequately describe Plaintiff's impairments and assess the ALJ's decision, the court has included in its review certain evidence that is dated prior to the relevant time frame.

<u>Evidence Concerning Physical Complaints</u>

Between August 2005 and June 2010 Plaintiff was seen at the Holmes County Public Health Clinic and Northwest Community Hospital for osteoarthritis of the knees, diabetes, hypothyroidism, arm pain, varicose veins, hypertension, headache, and back pain (tr. 309; 317; 322; 353; 360; 365; 409; 417; 532–39; 543). Plaintiff fractured her left wrist in February 2006, requiring her to undergo open reduction and internal fixation surgery (tr. 294).

Samuel Ward, M.D., evaluated Plaintiff in March 2008 at the Commissioner's request. Physical examination was largely normal, although Dr. Ward reported that he observed large varicose veins in both legs (tr. 452). Straight leg raises were within normal limits but caused pain in the right hip and left leg (*id.*). Dr. Ward's assessment was that Plaintiff suffered from obesity and joint pain (tr. 453). He also noted that Plaintiff's range of motion was normal except for limits in the left wrist and in the cervical spine, with respect to forward flexion and extension (tr. 454–55).

In August 2008 a non-examining state agency physician, John A. Dawson, M.D., noted in a Physical Residual Functional Capacity Assessment ("PRFCA") that Plaintiff was 5'2" tall and weighed 242 pounds, with allegations of "high blood pressure, thyroid problem, allergies, previous broken wrist, diabetes, and ankle pain" (tr. 498). Dr. Dawson's PRFCA references a May 2007 bone scan that showed lumbago; May 2007 x-rays of the knees that indicated minimal changes of osteoarthritis bilaterally; and a February 2006 x-ray of the left wrist that indicated excellent maintenance of alignment (*id.*). Dr. Dawson also noted the March 2008 report of Dr. Ward that showed physical findings generally within normal limits, including full range of motion in all joints except the cervical spine and left wrist. Dr. Dawson assessed Plaintiff as having an RFC consistent with light work (tr. 409–502).

In March 2009, magnetic resonance imaging ("MRI") revealed mild osteoarthritic change of the lumbar spine, degenerative disc disease with mild disc bulges at all levels from L1-2 to L5-S1, greater at L4-5 and L5-S1, and mild hypertrophic changes of the facet joints (tr. 541). The report of radiographs taken in June 2010 described normal alignment, normal vertebral body heights and disc spaces, with degenerative osteophyte production anteriorly (tr. 546). The evaluator concluded there

was "No acute process. Degenerative change." (*Id.*). A July 2010 cervical spine MRI revealed disc herniation at C5-C6 with associated mild to moderate central canal stenosis and a bulging disc at C4-5 causing borderline to mild spinal stenosis (tr. 545).

Evidence Concerning Mental Complaints

Psychologist George Horvat, Ph.D., examined Plaintiff in January 2008 at the Commissioner's request (tr. 446–48). Dr. Horvat noted Plaintiff's report that she "completed ninth grade in special education classes, but she had problems with reading, spelling, dyslexia, and slow learning" (tr. 447). He also noted that Plaintiff reported she got lost in familiar areas when driving, placed food in the refrigerator that belonged in a cabinet, and lost concentration and walked away from telephone conversations without returning (*id.*). Dr. Horvat observed that Plaintiff's attention was distractible, anxiety interfered with her concentration, and her memory was limited. She was oriented times four. Her mood and speech flow were normal and her affect was full range and appropriate. Thought content was also appropriate although pain preoccupied her. Plaintiff's intelligence level and fund of knowledge appeared to be average, based on verbal and math skills she demonstrated during the interview. Dr. Horvat's diagnoses included pain disorder, and rule out dementia, not otherwise specified ("NOS"). He assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 65, which indicated that Plaintiff had only mild psychological symptoms[10] (tr. 448). Dr. Horvat opined that Plaintiff was "not capable of handling finances at this time" (*id.*). He further noted that "[u]ntil her levels of cognitive and memory functioning can be established, it will be difficult to determine her potential for employment or to recommend a treatment program" (*id.*).

In April 2008, Dr. Horvat's assistant administered IQ tests to Plaintiff, which Dr. Horvat interpreted and scored (tr. 458–61). Plaintiff achieved a verbal IQ score of 66, performance IQ of 68, and a full scale IQ of 64 (tr. 460). Dr. Horvat noted that Plaintiff "displayed an interest in doing well. She tried hard and did not give up easily. She maintained good attention and concentration. .

---

[10] GAF is the overall level at which an individual functions, including social, occupational, academic, and other areas of personal performance. Diagnostic and Statistical Manual of Mental Disorders 30–32 (4th ed. 1994) ("DSM–IV"). It may be expressed as a numerical score. *Id.* at 32. A GAF score between 61 and 70 reflects mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships. *Id.*

. . This test is valid." (tr. 461). Dr. Horvat diagnosed Plaintiff with pain disorder; rule out dementia, NOS; and mild mental retardation. He again assessed Plaintiff with a GAF of 65 and opined she was "not capable of handling finances at this time" (*id.*). He concluded his report by stating that "[u]ntil her level of memory functioning can be established, it will be difficult to determine her potential for employment or to recommend a treatment program" (*id.*).

A Report of Contact dated May 15, 2008, states that Plaintiff called the Office of Disability Determinations to speak with an agency representative about the status of her case (tr. 280). The Report notes that Plaintiff denied having a memory problem, though she sometimes got side-tracked and forgot what she was talking about. She never had difficulty remembering to attend appointments or take her medication, and she did not get lost when she drove (*id.*). Plaintiff indicated that when she attended the consultative examinations [with Dr. Horvat], he asked her to name the last four or five presidents. Plaintiff reportedly laughed and said, "'why would I know who they are, and why would I care?'" (*id.*). The Report states Plaintiff made the comment that perhaps Dr. Horvat should have asked her something that someone from the country would know about, such as what kind of jig to use to catch a bass (*id.*). Plaintiff reported that she had taken regular classes while in school, with the exception that she attended special reading classes; according to the Report, Plaintiff stated "she was good in everything else" (*id.*). Plaintiff indicated that she got pregnant when she was sixteen and had her son at seventeen (*id.*). She got married and dropped out of school to take care of her family (*id.*). The Report notes that the agency representative later contacted Plaintiff's daughter, who confirmed that Plaintiff did not have memory problems, was able to drive herself and her grandson in the daughter's car, take her medication without assistance, and attend appointments on her own. According to Plaintiff's daughter, Plaintiff's problems were due to pain; if her mother was confused at times it was because pain kept her from sleeping (*id.*).

Two state agency psychologists reviewed the record evidence and prepared Psychiatric Review Technique ("PRT") assessments for Plaintiff (tr. 469–82; 505–518). In May 2008 Robert Schilling, Ph.D., determined that Plaintiff had the medically determinable impairment of pain disorder, a somatoform disorder under Listing 12.07, but that this condition was not severe (tr. 469; 475). Dr. Schilling did not find that Plaintiff had the medically determinable impairment of mental retardation, as set out in Listing 12.05 (*see* tr. 473). With respect to functional limitations, according to Dr.

Schilling, Plaintiff had no restrictions of activities of daily living; no difficulties in maintaining social functioning; no episodes of decompensation; and only mild difficulties in maintaining concentration, persistence, and pace that were related to her pain disorder (tr. 479; 481). Dr. Schilling concluded that Dr. Horvat's diagnosis of dementia was ruled out by the information contained in the May 15, 2008, Report of Contact (tr. 481). Dr. Schilling also noted that Dr. Horvat's psychological test results were suspect because, as stated in the Report of Contact, Plaintiff had not made a full effort during the interviews with Dr. Horvat; moreover, the Report of Contact reflected that Plaintiff reported she had never been in special education classes, but rather took only special reading classes and was "good in everything else" (*id.*). Also, given that Plaintiff had a limited education due to having dropped out of school in the ninth grade and that IQ tests measure learning, it appeared the IQ tests had assessed school capabilities from thirty years prior and had been affected by Plaintiff's less than full effort (*id.*). In an August 2008 PRT assessment, a second non-examining state agency psychologist, James L. Meyers, Psy.D., made similar findings and likewise concluded that Plaintiff did not have a severe mental impairment (tr. 505; 511; 517). Dr. Meyers noted that the diagnosis of dementia, NOS, had been ruled out based on the May 15, 2008, Report of Contact, and—also based on the Report—the mental retardation diagnosis and IQ results were "deemed invalid due to admitted lack of effort on claimant's part." (tr. 517).

V.  HEARING TESTIMONY

At the July 21, 2010, administrative hearing, when asked by the ALJ if she had any difficulty reading, writing, or doing simple addition and subtraction, Plaintiff stated "yes." Plaintiff indicated that she would have some trouble reading a newspaper advertisement but would be able to locate it in the paper (tr. 58). Also, according to Plaintiff, she was "not good at writing" (*id.*). With respect to performing simple math calculations, rather than figuring her change herself when making purchases she usually relied on the cashier to be honest with her (*id.*).

In response to questioning by her counsel, Plaintiff indicated that she had completed the eighth grade and had taken "special classes" (tr. 64). She quit school in the ninth grade "because it wasn't doing me no good, so I got tired of it" (tr. 65). She had never worked at a job that required her to read or write (*id.*). Plaintiff also testified that she had pain "through the back part of my head . . . [d]own into my neck . . . [and] in my right arm" (tr. 69). Her left arm was also painful, due to her having

"crushed my wrist. I got a plate in there, and it—my left hand hurts some too" (*id.*). In response to the question "how does that affect you in what you do during the day,?" Plaintiff replied that it is "hard for me to sweep and stuff like that," and it made her back and neck hurt (tr. 69–70). Holding the broom was also a problem for Plaintiff, due to the prior injury to her left wrist (tr. 70), and pain from her cervical spine problem made it difficult for her to lift even a gallon of milk (tr. 71–72). According to Plaintiff, she did not do much all day "other than sit in the chair, because I hurt. I sleep in a chair, because I hurt." (tr. 72–73). Plaintiff also testified that she suffered knee pain that had worsened in the past year and "hurt me bad. Sometimes I can't get up and down out of a chair." (tr. 74). Plaintiff also testified that her blood glucose levels fluctuated; she could tell when they were elevated because she had "bad headaches" and felt tired (tr. 76). Plaintiff had also experienced pain in her feet for about a year, which she thought was related to her diabetes (tr. 77). Due to a varicose vein in her right leg, which swelled and was painful, if she stood for six hours in an eight-hour workday she would be unable to do the same the next day (tr. 79).

A VE also testified at the administrative hearing. According to the VE, Plaintiff had past work as a kitchen helper at the medium exertional level (tr. 86). She also had prior work as a utility worker in a florist shop; that work, as performed by Plaintiff, involved cutting flowers and was at the light exertional level (*id.*). The ALJ presented the ALJ with the following hypothetical question: would a fifty-year-old individual with a ninth grade education who could read, write, and perform simple mathematical computations and is limited to light exertional work activities[11] perform Plaintiff's past work? The VE responded that such an individual could perform the utility worker position, not as defined in the Dictionary of Occupational Titles ("DOT") but rather as Plaintiff had performed it (tr. 88). The individual could not perform the kitchen helper job Plaintiff had held (*id.*). Additionally, the individual could perform the positions of office helper, ticket seller, and cafeteria attendant (tr. 90). The ALJ posed a second hypothetical question to the VE, which described an individual of the same age and education as the individual in first question but who was limited to sedentary work, required hourly breaks in the morning and afternoon, and needed to miss seven to nine days of work each month.

---

[11] That is, the individual could sit, stand, walk, push and/or pull for at least six out of eight hours; could climb ramps, stairs, and crawl no more than one-third of an eight-hour workday; and could not climb ladders, ropes, or scaffolding.

Case No.: 5:12cv242/MMP/EMT

The VE responded that such an individual would not be able to perform Plaintiff's past work as a utility worker, either as defined in the DOT or as she had performed it (tr. 89).

## VI. DISCUSSION

Plaintiff's grounds for relief are that the ALJ erred by (1) failing to properly assess Plaintiff's mental impairment of mental retardation at steps two and three of the sequential analysis; and (2) finding Plaintiff is not credible (doc. 16 at 1). Plaintiff also complains of certain procedural irregularities in the ALJ's decision (*id.*). Plaintiff seeks reversal of the Commissioner's decision or, alternatively, remand for further proceedings (*id.* at 15). The Commissioner responds that the ALJ's decision is in accordance with applicable law and supported by substantial evidence. Accordingly, she submits, the decision denying benefits should be affirmed.

<u>The ALJ's Step Two and Step Three Findings</u>

Plaintiff contends that Dr. Horvat's clinical diagnosis of mental retardation and the IQ scores of 64–68 he obtained and considered valid are sufficient to establish her mild mental retardation as a severe impairment at step two. Plaintiff also contends that at step three all of the requirements of Listing 12.05C are satisfied.

At the center of Plaintiff's challenge to the ALJ's step two and three determinations is the May 15, 2008, Report of Contact which the ALJ—as well as Dr. Schilling and Dr. Meyers—referenced in discounting Dr. Horvat's assessment that Plaintiff is mildly mentally retarded. The Commissioner contends that as Plaintiff's counsel was given the opportunity at the administrative hearing to object to the Report, but failed to do so, he waived any objection in this regard (tr. 51). The court agrees that any objection to the admission of this evidence into the record may be deemed waived. *See* <u>Mills v. Apfel</u>, 244 F.3d 1, 8 (1st Cir. 2001) (objections not presented to the ALJ are waived); <u>Bechtold v. Massanari</u>, 152 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001) (objection deemed waived when not raised in administrative hearing). Nevertheless, as the Report of Contact is part of the record, Plaintiff is not precluded from arguing against the ALJ's reliance on it.

At step two of the sequential evaluation process, a claimant must prove that she is suffering from a severe impairment or combination of impairments, that have lasted (or must be expected to last) for a continuous period of at least twelve months, and which significantly limit her physical or mental ability to perform "basic work activities." *See* 20 C.F.R. §§ 416.909, 416.920(c), 416.921(b). Basic

work activities include mental functions such as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). An impairment can be considered non-severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Although the claimant carries the burden at step two, the burden is mild. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). A claimant need only show that "her impairment is not so slight and its effect is not so minimal." *Id.* At step two of the sequential analysis the claimant must show that (1) she has a medically determinable impairment or combination of impairments, and (2) the impairment or combination of impairments is severe. *See* Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed.2d 119 (1987); 20 C.F.R. § 416.920(c).

  In this case, at step two the ALJ rejected the diagnosis of mild mental retardation made by Dr. Horvat because "it was based on test results that were admittedly invalid" (tr. 34). In concluding that the IQ test results obtained by Dr. Horvat were "admittedly invalid," the ALJ cites the May 15, 2008, Report of Contact (tr. 280) and the PRT of Dr. Meyers (tr. 517), which in turn cites Dr. Schilling's PRT (tr. 481) discounting Dr. Horvat's diagnosis of mild mental retardation and IQ scores on the basis of statements shown in the Report of Contact.

  Upon review of the May 15, 2008, Report of Contact (tr. 280), the court does not agree that it contains statements from Plaintiff which may be taken as an admission that the IQ tests conducted in Dr. Horvat's office should be considered invalid. The fact that in May 2008 Plaintiff may have expressed disdain for some questions Dr. Horvat posed to her (apparently during the first interview in January 2008[12]) does not constitute substantial evidence that Plaintiff did not give full effort to the IQ tests she took in April 2008, much less that Plaintiff should be deemed to have "admitted" that her IQ test results were invalid. Other reasons, for example, embarrassment about not knowing facts she

---

[12] Given that much of the April 2008 report concerning Dr. Horvat's interview with Plaintiff appears to have been simply copied verbatim from the January 2008 report, it is unclear to what extent Dr. Horvat actually questioned Plaintiff in April 2008.

Case No.: 5:12cv242/MMP/EMT

believed others might perceive as common knowledge, could explain Plaintiff's apparently dismissive statement to the agency representative. In short, the ALJ relied on the Report and Dr. Meyers' PRT citing the Report (which referenced Dr. Schilling's PRT that also cited the Report) to reject Dr. Horvat's findings and to find no severe mental impairment at step two. But there is nothing in the Report of Contact, or in the PRTs from Dr. Schilling and Dr. Meyers, that demonstrates Plaintiff's test results were invalid or "admittedly invalid," and the ALJ cites no other record evidence to support this finding. The only evidence in the record from an examining source concerning a mental impairment is the two assessments from Dr. Horvat, the latter one of which found valid IQ scores in the range of 64–68 and diagnosed Plaintiff with mild mental retardation. And, other than the reason for rejecting this assessment which the court has discredited, the ALJ offered no reason for refusing to accept Dr. Horvat's opinion that Plaintiff is mildly mentally retarded.[13] The court therefore concludes that the ALJ erred at step two when he found Plaintiff's IQ test scores were "admittedly invalid," and precluded a diagnosis of mild mental retardation, because substantial evidence does not support this finding.

The ALJ's error must be considered under a harmless error standard. *See* Delia v. Comm'r of Soc. Sec., 433 F. App'x 885, 887 (11th Cir. 2011) ("Because the ALJ gave full consideration to the consequences of Delia's mental impairments on his ability to work at later stages of the analysis, the error at step two was harmless and is not cause for reversal."). Here, after making his step two finding, the ALJ continued with step three of the sequential analysis, which is all that is required at step two. "[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). "[N]othing requires that the ALJ must identify at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to

---

[13] To be sure, Dr. Horvat's assessments are not without their weaknesses, although the weaknesses were not discussed by the ALJ. As noted, it appears that the April 2008 report was largely copied from the January 2008 report. Additionally, although Dr. Horvat observed in both reports that Plaintiff's intelligence level and fund of knowledge appeared to be average based on her demonstrated math and verbal skills (tr. 447, 460), in his April 2008 report he nevertheless made what appears to be the internally inconsistent diagnosis of mild mental retardation (tr. 461).

demonstrate that [he] has considered all of claimant's impairments, whether severe or not, in combination." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824–25 (11th Cir. 2010).

In this case, at step three the ALJ specifically referred only to Plaintiff's severe impairments of degenerative disc disease, diabetes mellitus, and obesity, making no mention at all of any of her non-severe impairments, including mild mental retardation (tr. 34–35). Although the ALJ discussed Plaintiff's allegations of mild mental retardation in formulating the RFC, he completely rejected them, and he did not mention the impairment of mild mental retardation at steps four or five or account for any mental impairments in the hypothetical questions posed to the VE. As the ALJ did not consider the possible limiting effects of Plaintiff's alleged mental impairment at each succeeding step of the sequential analysis in combination with her other severe and non-severe impairments, the court concludes that the error at step two prejudiced her and therefore was not harmless. *See* Reed–Goss v. Astrue, 291 F. App'x 100, 101 (9th Cir. 2008); Riepen v. Comm'r of Soc. Sec., 198 F. App'x 414, 415 (6th Cir. 2006); Newton v. Astrue, No. 1:06–CV–1542–AJB, 2008 WL 915923, at *10 (N.D. Ga. Apr. 1, 2008). In light of this harmful error, reversal and remand is appropriate for a reevaluation of the relevant evidence and a determination of whether Plaintiff's alleged mild mental retardation constitutes a severe impairment at step two, as defined in 20 C.F.R. § 416.920(c), and if so, whether she is disabled under the remaining steps of the sequential analysis. *See* Title 20 C.F.R. §§ 416.920(d), (f), (g). To properly assess Plaintiff's alleged mental impairment of mild mental retardation and fully develop the record of this condition, the ALJ should also recontact Dr. Horvat for clarification of his opinion, *see* 20 C.F.R. § 404.1512(e) (medical sources should be recontacted when the evidence received from that source is inadequate to determine whether the claimant is disabled), and/or obtain additional IQ testing or other psychological evaluations of Plaintiff from Dr. Horvat or other acceptable medical source(s).

Plaintiff also asserts that she can satisfy all of the requirements of Listing 12.05C at step three. Listing 12.05 begins with an introductory paragraph that states, "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. The Listing further provides that the "required level of severity for this disorder is met when the requirements in

[subsections] A, B, C, or D are satisfied." *Id.* Subsection C requires, "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*, § 12.05C. The Eleventh Circuit has determined that in order to be considered for disability benefits under Listing 12.05, a claimant must at least have: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) manifested deficits in adaptive behavior before age twenty-two. Pettus v. Astrue, 226 F. App'x 946, 948 (11th Cir. April 5, 2007) (citing Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997)).

In Social Security cases, the role of this court is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's findings, not to find facts. Because of this limited role, the general rule is to reverse and remand for additional proceedings when errors occur. *See, e.g.*, Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice); Foote, 67 F.3d at 1562 (stating that an insufficient credibility finding is "a ground for remand when credibility is critical to the outcome of the case") (emphasis added); Salter v. Astrue, No. 3:08cv189/RV/EMT (N.D. Fla. May 22, 2009) (doc. 15)) (same). A case may be remanded for an award of disability benefits, however, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis, 985 F.2d at 534; *see also* Bowen v. Heckler, 748 F.2d 629, 636 (11th Cir. 1984) (if the Commissioner's decision is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the decision with or without remanding the case for a rehearing); Carnes, 936 F.2d at 1219 ("The record . . . is fully developed and there is no need to remand for additional evidence.").

Here, it is far from clear that the cumulative effect of the evidence, without any doubt, establishes Plaintiff's disability based on mild mental retardation at step three of the sequential analysis. Davis, 985 F.2d at 534. The *only* evidence of Plaintiff's mild mental retardation can be found in Dr. Horvat's consultative evaluation from April 2008, when—at the age of forty-nine—for the first time in her life and on the basis of two brief examinations and one-time IQ testing, Plaintiff was diagnosed with this impairment by Dr. Horvat. As noted previously, *see* n.13, *supra*, Dr. Horvat's assessments are internally inconsistent, diagnosing Plaintiff with mild mental retardation

while at the same time stating that her intelligence level appeared to be average (tr. 447; 460). Moreover, although Plaintiff argues otherwise (doc.16 at 9–10), the court does not conclude that Plaintiff's history of having a child at age seventeen before dropping out of school, experiencing abuse, being enrolled in special reading classes, relying on the honesty of a cashier rather than calculating her change from a $10 bill, not being able to spell simple words without assistance, not being able to type or use a computer, and working as a florist's helper cutting flowers and cleaning and as a cafeteria worker alone establishes deficits in adaptive functioning sufficient to meet the requirement of Listing 12.05C. Many of the experiences recited by Plaintiff are quite common or may be correlated with a limited education; they are not necessarily indicative of significant deficits in adaptive functioning. In short, in its current state, the record concerning Plaintiff's alleged mental impairment simply is not adequately developed to establish disability under Listing 12.05C. Carnes, 936 F.2d at 1219.

The ALJ's Credibility Finding and Alleged Procedural Irregularities in the ALJ's Decision

Plaintiff asserts that the ALJ's credibility determination is not supported by substantial evidence because it fails to adequately consider the evidence of her mental limitations. Given the court's conclusion that the ALJ should reevaluate Plaintiff's alleged mild mental retardation, upon remand the ALJ should also reassess Plaintiff's credibility, including with respect to her alleged mental limitations.[14] Additionally, in light of the deficiencies noted below, this reassessment should include consideration of Plaintiff's subjective complaints of pain.

---

[14] The ALJ considered evidence regarding Plaintiff's education and alleged difficulties with writing, reading, and simple math and found her allegations concerning these matters to be less than fully credible (tr. 37). The court is not aware of any statement in the record directly attributed to Plaintiff that indicates she reported attending "special education" classes. She made a statement in her SSI application indicating she did not take "special education" classes (tr. 229). The Report of Contact reflects that she stated she attended a "special class" for reading only (tr. 280), and Dr. Horvat, accurately or not, merely repeated Plaintiff's statement to him of having attended "special education" classes (tr. 447). Even Plaintiff's hearing testimony before the ALJ is unclear regarding her educational background, as she simply stated "yes" when asked by her counsel if she had been in "special classes" (tr. 64). Plaintiff was not asked if she had been enrolled in "special education classes," a question that might have had a different connotation to Plaintiff and thus might have elicited a different answer. On remand, the ALJ will have the opportunity to address and clarify any ambiguities concerning Plaintiff's education.

The ALJ referenced the correct pain standard[15] and Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996),[16] before determining that Plaintiff's statements were not credible to the extent they were inconsistent with the RFC assessment (tr. 35).[17] He did not, however, summarize or address Plaintiff's hearing testimony[18] regarding her subjective complaints of pain or articulate specific reasons for discounting those complaints, although it appears he did so based on a lack of objective proof of her symptoms. While a lack of objective evidence is a factor that may properly be considered in discounting a claimant's complaints of pain, it may not be the *only* basis for doing so. *See* 20 C.F.R. § 1529(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"); SSR 96–7p (because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," an ALJ "*must consider [other factors] in addition to the objective medical evidence* when assessing the credibility of an individual's statements") (emphasis added); 20 C.F.R. § 416.929(c)(3).[19] *See also, e.g.*, Cline

---

[15] To establish disability based on testimony concerning pain or other subjective symptoms, a three-part "pain standard" must be satisfied. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). That is, a claimant must first show evidence of an underlying medical condition and then either (a) objective medical evidence that confirms the severity of the alleged pain stemming from that condition, or (b) that the objectively determined medical condition is so severe that it can reasonably be expected to cause the alleged pain. *Id.*; *see also* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that this "standard also applies to complaints of subjective conditions other than pain").

[16] Pursuant to SSR 96-7p, a claimant's credibility determination must include consideration of the entire case record, objective medical evidence, the individual's own statements about symptoms, statements provided by treating or examining physicians or psychologists, and other persons about the symptoms and how they affect the claimant, and any other relevant evidence in the case record. *See* SSR 96–7p, 1996 WL 374186, at *4.

[17] The evidence cited by the ALJ in support of his credibility finding includes x-rays of the hip, knees, and cervical spine; abdominal computerized tomography ("CT") scans; MRIs of the lumbar and cervical spine; a Doppler test; various medical examinations; the PRTs of Dr. Schilling and Dr. Meyers; Dr. Horvat's assessments; and the May 15, 2008, Report of Contact containing statements from Plaintiff and her daughter (tr. 36–37).

[18] The ALJ apparently intended to summarize Plaintiff's hearing testimony, although he did not, as the decision states, "At the hearing the claimant alleged that she was unable to sustain fulltime employment due to [blank]." (*See* tr. 35).

[19] SSR 96-7p and 20 C.F.R. § 416.929(c)(3) cite the following factors: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the

v. Sullivan, 939 F.2d 560, 566 (8th Cir. 1991) ("an ALJ may not base a denial of benefits solely on a lack of objective medical evidence") (citations omitted). In this case, the ALJ did not discuss the factors set out in SSR 96–7p and § 416.929(c)(3), such as what may precipitate or aggravate Plaintiff's pain, what medications, treatment or methods are used to alleviate pain, and how the pain affects her daily living. On remand, the ALJ should do so.

As a final matter, Plaintiff asserts the ALJ's decision contains procedural irregularities pertaining to the issuance of the decision, including whether it was ALJ Biloon or ALJ Gold who actually rendered the decision and whether (in light of the void in the decision concerning Plaintiff's hearing testimony) an incomplete or draft decision was issued (doc. 16 at 1). Because the court is recommending that this matter be remanded for further proceedings on the substantive issues of the ALJ's flawed step two and credibility findings, Plaintiff's arguments regarding these alleged procedural problems need not be addressed.

VII. CONCLUSION

For the foregoing reasons, the undersigned concludes that the Commissioner's decision is not supported by substantial evidence and should not be affirmed. *See* 42 U.S.C. § 405(g); Foote, 67 F.3d at 1556 (remanding for additional administrative proceedings). Pursuant to sentence four of 42 U.S.C. § 405(g), the court therefore recommends reversal of the decision of the Commissioner and remand for further proceedings consistent with this Report and Recommendation.

Accordingly, it is **ORDERED**:

That the docket shall reflect that Carolyn W. Colvin has been substituted for Michael J. Astrue as Defendant in this action.

And it is respectfully **RECOMMENDED**:

1. That, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be **REVERSED** and this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

2. That the clerk be directed to close the file.

---

claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures used to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

Case No.: 5:12cv242/MMP/EMT

At Pensacola, Florida this 22nd day of July 2013.

                              s/ *Elizabeth M. Timothy*
                              **ELIZABETH M. TIMOTHY**
                              **UNITED STATES MAGISTRATE JUDGE**

### **NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.** A copy of any objections shall be served upon any other parties. **Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** <u>United States v. Roberts</u>**, 858 F.2d 698, 701 (11th Cir. 1988).**